IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **PATRICIA A. BRITT** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action Number |
| | ) | **5:07-cv-1474-UWC** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This Court finds the Administrative Law Judge's ("ALJ") decision, which has become the decision of the Commissioner, is supported by substantial evidence. Therefore, for the reasons elaborated herein, the Court will AFFIRM the decision denying benefits.

**I.  Procedural History**

Plaintiff filed an application for disability insurance benefits in February 28, 2002. (R. 65-67, 80.) This application was denied administratively at the initial and

1

reconsideration stages.  Plaintiff requested a hearing before an ALJ.  (R. 60-61.)  On November 21, 2002, the ALJ denied the claim. (R. 50-54.)  This denial became the final decision of the Commissioner of the SSA when the Appeals Council refused to grant review on December 7, 2006.  (R 3N.)  Plaintiff appealed the decision to the Court and the SSA moved for remand, which was granted on November 21, 2003.  (R. 258-59.)  A second administrative hearing was held on May 26, 2005, and an unfavorable decision issued July 22, 2005.  (R. 3N-3CC.)  The Appeals Council found no reason to reverse the decision.  Having timely pursued and exhausted her administrative remedies, Plaintiff filed an action for judicial review in Federal District Court pursuant to section 1631 of the Social Security Act, 42 U.S.C. § 1383(c)(3).

## II.  Factual Background

Plaintiff is a fifty-nine year-old woman who completed fifth grade.  (R. 379, 101 - 105.)  Plaintiff has past relevant work experience as a kneading machine operator and leather worker.  (R 379-82.)  Plaintiff's disability insured status ended on June 30, 1996. (R. 378-79.)  She suffers from back pain, knee pain, anxiety, depression and acid reflux.[1]

Plaintiff's medical records begin with an initial visit to an orthopedist on October 6, 1987.  (R. 150.)  At that visit, Plaintiff reported that she had been treated by an orthopedist in another city who had performed a surgical procedure on her right knee.  (R.

---

[1] There is nothing in the record to support a finding that Plaintiffs' digestive problems are disabling.

148-50.)  After completion of the examination, the new orthopedist recommended a patellectomey, which was performed on October 14, 1987.  (R. 151.)  She was released from the hospital on October 17, and had follow-up visits on October 23 and November 16.

She missed an appointment on February 5, 1988 and did not return to the orthopedist until February 1993, five years later, at which time she complained of left knee pain and shoulder pain.  (146-47.)  Her knee x-rays showed degenerative arthritis changes and she was treated with Voltaren.  (R. 146.)  She returned on March 8, 1993, because the medication was not helping.  (R. 145.)  While she was given an injection for her shoulder, she was given a new medication for her knee.  (*Id*.)  She was scheduled to return in late March, but then rescheduled for April.  She cancelled the April appointment.  (R. 145.)

Over one year later, on July 14, 1994, Plaintiff began treatment with her primary care physician, Dr. L. Frank Chandler, at which time she complained of bilateral knee pain and other aliments.  (R. 189.)  Later that year, she missed two appointments scheduled with the orthopedist.  (R. 145.)

Almost two years later, in April 1996, Dr. Chandler noted Plaintiff was experiencing emotional turmoil.  (R. 188.)  By July, 29, 1996, Dr. Chandler diagnosed Plaintiff with clinical depression.  (R. 187.)  These were the only significant events that occurred prior to her onset date of July 30, 1996.  By December of that year, she had

received knee injections. (R. 3R, 185.)

In 1997, Dr. Chandler noted Plaintiff suffered from chronic anxiety. (R. 183.) In early August 1998, Dr. Chandler noted Plaintiff was experiencing a lot of stress and worsening depression. (R. 179.) Shortly thereafter, Plaintiff reported "horrible pain in her knee and back." (R. 178.)

On August 28, 1998, Plaintiff first complained to her orthopaedic physician of low back pain (R. 143.) At that time she also complained of bilateral knee pain. (*Id*.) Upon examination, she had tenderness in the lumbar area. (*Id*.) Her right knee had excellent range of motion, but some crepitation (a dry crackling sound). (*Id*.) The left knee had increased crepitation. (*Id*.) Her x-rays showed narrowing of the lateral compartment around the knee cap. (*Id*.) Her orthopedist noted Plaintiff was too young to have total knee replacement. (*Id*.) She was treated with Voltaren and was scheduled to return in three weeks. (*Id.*) However, she failed to keep several appointments.

Several months later, in November 16, 1998, when Plaintiff presented for her annual physical, her primary complaint was of "progressive anxiety and depression." (R. 176.) In May 1999, Dr. Chandler again noted Plaintiff was experiencing chronic anxiety. (R. 173.) Several months later, he noted major worsening depression and emotional problems, as well as poorly controlled depression. (R. 172.)

On at least six occasions during 2000, Plaintiff complained of anxiety, low back and/or knee pain. (R. 170-71, 167-68, 192.) Dr. Chandler prescribed Lortab at this

juncture.  (R. 167.)  Her August 2000 MRI revealed mild spinal stenosis secondary to mild posterior disk bulging.  (R. 192.)  Around September 2000, Plaintiff was in an automobile accident from which she suffered a fractured rib, sternal fracture and fracture of the arm.  (R. 206-13/141, 142.)  A November 1, 2000, orthopedist's note indicates Plaintiff complained of chronic low back pain and knee pain for which she took Xanax and Benadryl.  (R. 139.)

    Approximately four months later, on March 19, 2001, she again complained of low back pain that had lasted for months.  (R. 138.)  Additionally, she complained of knee pain. (R. 138.)  Indeed, the left knee had been chronically swollen and her x-rays showed marked narrowing of the lateral compartment on each knee.  (R. 138.)  Upon examination, her orthopedist observed crepitation beneath the knee cap.  (R. 138.)  As a result of this examination, the orthopedist recommended knee surgery.  (R. 138.) However, Plaintiff had to reschedule the surgery due to family obligations.  Notes from an April 3, 2001, examination indicate that Plaintiff was experiencing a lot of difficulty with her knees at this time.  (R. 137.)  Additionally, the orthopeadist observed swelling in Plaintiff's knee.  (R. 137.)

    Plaintiff was hospitalized from July 14 through July 17 for total left knee replacement.  (R. 115-17.)  She was pleased with the surgery and had the right knee replaced in December of 2001.  (R. 118.)  By March 18, 2002, she had "excellent motion, full extension, 110 degrees of flexion."  (R. 134.)  Plaintiff was scheduled to follow-up in

six months.  (*Id.*)

On April 1, 2002,  Dr. Chandler noted Plaintiff had chronic lower back pan and anxiety.  He prescribed oxycotin.  (R. 154.)  The following month, on May 30, 2002, Dr. Chandler completed a medical opinion form where he was asked to comment on Plaintiff's condition prior to June 30, 1996, the date of disability.  Dr. Chandler wrote: "Due to Ms. Britts [sic] multiple orthopaedic and medical problems, I feel that she is totally and permanently disabled."  (236-38, 246.)  According to Dr. Chandler, Plaintiff could only sit, stand or walk one hour out of each day.

On October 17, 2002, Dr. Chandler completed a mental limitations form on which he indicated Plaintiff had severe anxiety and depression.  (R. 252.)  Additionally, he rated as "poor" her ability to adapt to stressful circumstances in work settings and her ability to deal with the public."  (R. 251-52.)  However, he rated as "good" her ability to communicate appropriately and maintain her personal appearance.  Her ability to concentrate and complete tasks in a timely manner, as well as follow work rules and relate to co-workers/supervisors was rated as "fair."  (*Id.*)

Over the next four months, Plaintiff had a series of epidural injections in her back. (R. 284.)  At the time of the third injection, on February 13, 2004, her orthopedist noted that the first two injections had provided only "some degree of relief" and she still had pain that extended down into her legs and caused some numbness and tingling of the feet. (R. 284.)  On March 4 she had another epidural.  (R. 290.)  Her CT scan revealed broad-

based bulges, but no herniated disc. (R. 291.) Three months later, in June 2004, she a a total left hip replacement. (R. 362-74.)

On April 21, 2005, Dr. Chandler completed a Physical Capacities Evaluation and Clinical Assessment of Pain. (R. 299-304.) In that evaluation he noted that Plaintiff could only sit or stand for 1 hour per day and that her pain was at a level which would interfere with her ability to work. (R. 299.) Finally, he noted that her medications could be expected to cause severe side effects. (R. 301.) In a handwritten note attached to the evaluation, Dr. Chandler stated the following:

> I have seen Ms. Britt since 1994 and I have found her to have severe and debilitating bilateral keen pain, depression, anxiety, generative disc and hypertension since 1996.

(R. 304.)

At the second administrative hearing, Plaintiff testified that she did seek mental health treatment because she did not have the financial resources to do so. (R. 44.)

After the second administrative hearing, the ALJ found that Plaintiff suffers from severe impairments, but that the impairments do not meet or equal a listing. (R. 3N-3CC.) The ALJ failed to credit the functional capacities evaluations by Dr. Chandler for several reasons. First, the ALJ determined that Dr. Chandler's evaluations were made many years after the date Plaintiff was last insured and that, that medical records for the relevant period did not support the conclusions reached by Dr. Chandler.

7

### III.  Controlling Legal Principles

A disability claimant has a heavy, but not insuperable, burden to establish entitlement to benefits.  *Mims v. Califano*, 581 F.2d 1211, 1213 (5th Cir. 1978).  The district court's standard or scope of review is limited to determining whether the substantial evidence support's the Commissioner's decision.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  Additionally, the Court must determine whether proper legal standards were applied.  *Lewis v. Callahan*, 125 F. 3d 1436, 1439 (11th Cir. 1997) (citing *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987)).

Substantial evidence is more than a scintilla, but less than a preponderance.  It is such evidence a reasonable mind would accept as adequate to support a conclusion.  *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  In contrast, the Commissioner's legal conclusions are more closely scrutinized.  "The [Commissioner's] failure to apply the correct law or to provide the reviewing Court with the sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."  *Cornelius v. Sullivan*, 969 F.2d 1143, 1145-45 (11th Cir. 1991).

Applicable agency regulations require a sequential evaluation of adult disability claims.  20 C.F.R. § 404.1520 (1983).  The first consideration is whether the claimant is working.  If the claimant is working, she is not disabled.  If the claimant is not working, the Commissioner must determine whether the claimant suffers from a severe

impairment. If the claimant does not suffer from a severe impairment, she is not disabled. If the claimant suffers from a severe impairment, then the Commissioner must consider whether the claimant meets any of the listings in 20 C.F.R. pt 404, subpt P, app. 1 ("Listing"), which details "impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 404.1520(a). *See Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985). If the claimant's medical profile meets the criteria for an impairment in the "Listing," then the claimant is disabled by law and no further inquiry is necessary.

The burden is on the claimant to show that she meets the criteria under the listing. To meet the listing, the claimant must be (1) diagnosed with a condition that is listed or its equivalent, and (2) provide objective medical reports documenting that this condition meets the specific criteria of the applicable listing and duration requirement. *See Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987).

When a claimant's "severe" impairment does not fall within a Listing, but nonetheless restricts her ability to perform basic work activities, the ALJ must then assess the claimant's residual functional capacity and the range of work activities that the claimant could perform despite his impairments. This evaluation must give consideration to claimant's subjective complaints, accounting for nature of pain, medication, treatment, functional restrictions, claimant's daily activities, and other relevant factors. 20 C.F.R. § 404.1512.

Additionally, pursuant to 20 C.F.R. § 404.1523, the ALJ is required to consider the disabling effect of multiple impairments:

> In determining whether your physical or mental impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all your impairments without regard to whether any such impairments if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medially severe combination of impairments, we will determine that you are not disabled.

Pain alone can be disabling. When a claimant claims disability based solely on pain, a three-part standard is utilized in assessing the credibility of his testimony. The claimant must establish evidence of an underlying impairment and either: (1) objective medical evidence to confirm the severity of pain alleged, or (2) a finding that the impairment is of such a severity that it can be reasonably expected to cause the pain alleged. *See, e.g.*, *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986); *Marbury v. Sullivan*, 957 F.2d 837 (11th Cir. 1992) (emphasis added).

## IV. Analysis

Because the Plaintiff is seeking disability insurance benefits, rather than social security income benefits, she must establish that she was disabled on July 30, 1996, the date upon which her insured status ended. Given this requirement, the Court finds that the SSA's decision must be affirmed.

A.     Knee ailments:

Although Dr. Chandler's evaluation indicates that Plaintiff was disabled on July 30, 1996, the medical records do not support such a finding.[2] While Plaintiff had surgical procedures performed on her knees in October 1987, after the surgery she had two follow-up visits, a missed appointment and then did not return to the orthopedist until 1993, five years later. At this point she complained of knee pain, but her orthopedist simply prescribed medication. After a follow-up visit where the orthopedist changed her medication, she missed two appointments. Over one year later, she complained of knee pain to her new primary care physician, Dr. Chandler. However, she missed two appointments with her orthopedist that same year, 1994. These are the only significant events that occurred before her disability insured date of July 30, 1996.

There is nothing about this evidence that might suggest Plaintiff was disabled during this period.


B.     Depression:

In April 1996, Dr. Chandler noted Plaintiff was experiencing emotional turmoil. (R. 188.) By July, 29, 1996, Dr. Chandler diagnosed Plaintiff with clinical depression. (R. 187.) While Plaintiff's later records are replete with notations about depression and

---

[2] The Court notes that the records do support a finding that Plaintiff was disabled on or around early February, 2001. However, such a finding would only be relevant if Plaintiff were eligible for social security income benefits.

anxiety, Dr. Chandler's records prior to July 30, 1996, do not establish that Plaintiff's mental condition was disabling.

C.     Back pain:

Plaintiff's first recorded complaint regarding back pain did not occur until her August 19, 1998 visit to Dr. Chandler. This visit occurred over two years after her disability insured date.

Therefore, by separate order, the decision denying benefits will be **AFFIRMED.**

Done this 29th day of February, 2008.

                                                   _____
                                                            U.W. Clemon
                                                    United States District Judge